# UNITED STATES DISTRICT COURT
# DISTRICT OF COLORADO

**VAL DZIAGWA,**
individually and on behalf
of all others similarly situated;

*Plaintiff,*

v.                                                                          Case No. 1:21-cv-314

**GENERALI U.S. BRANCH and
CUSTOMIZED SERVICES
ADMINISTRATORS, INC., d/b/a
CSA TRAVEL PROTECTION AND
INSURANCE SERVICES;**

*Defendants.*                                                   **JURY TRIAL DEMANDED**

## PLAINTIFF'S ORIGINAL CLASS ACTION COMPLAINT

COMES NOW Plaintiff Val Dziagwa ("Plaintiff"), individually and on behalf of all other similarly situated persons, against Defendants Generali U.S. Branch and Customized Services Administrators, Inc. d/b/a CSA Travel Protection and Insurance Services, and brings this putative class action. In support thereof, Plaintiff makes the following allegations upon personal knowledge of the facts pertaining to herself and on information and belief as to all other matters, and states as follows:

### I. NATURE OF ACTION

This is a class action arising out of Defendants' breach of the terms of travel insurance policies Defendants issued to Plaintiff. Defendants contracted to indemnify Plaintiff and all others similarly situated for pecuniary and other losses and damages incurred as a result of covered events that prevented insureds from taking their planned trip. Plaintiff's claims, as well as the claims of

each proposed class member, are supported by the written provisions of the Policy for travel protection insurance underwritten and administered to them by Defendants. *See* **Exhibit 1**, Policy. The Policy, and all CSA Travel Protection Policies at issue for all other class members nationwide, is identified as "Policy Form series G-200HA."[1]

1. Defendants have caused substantial harm to Plaintiff and the proposed class by improperly refusing to issue reimbursement for trip cancellations and travel delays explicitly covered by the Policy. Plaintiff has been completely denied reimbursement for his Trip Cancellation Claim (the "Claim"). Defendants have refused to pay COVID-19 related trip cancellations by others insured under the Policy, depriving Plaintiff and the putative class members' the maximum benefits available under the Schedule of Coverage in the Policy.

2. Plaintiff brings this action on behalf of himself and all other similarly situated individuals. Plaintiff seeks to recover compensatory damages (plus attorney fees and costs), as well as declaratory and injunctive relief.

## II. PARTIES

3. Plaintiff Val Dziagwa is a citizen of the United States residing in the city of Arvada, in Jefferson County, Colorado.

4. Defendant Generali U.S. Branch ("Generali") is, upon information and belief, a Maryland corporation with its principal place of business located in New York, New York. It is the U.S. representative office of Assicurazioni Generali, S.p.A., an Italian corporation located in Trieste, Italy. Generali is licensed to do business in all 50 states as well as in the District of Columbia, and operates under various trade named in various states, including "Assicurazioni Generali – U.S. Branch" in Colorado.

---

[1] *See* **Exhibit 1**, The Policy, at *16.

5. Defendant Customized Services Administrators, Inc. ("CSA") is, upon information and belief, an active California corporation with its principal place of business in California and branches in Alabama, Arizona, Arkansas, Colorado, Florida, Georgia, Hawaii, Indiana, Kentucky, Maine, Massachusetts, Minnesota, Missouri, Montana, New Mexico, Nevada, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, South Carolina, South Dakota, Texas, Virginia, West Virginia, and Wyoming.

6. Currently and at all times relevant herein, Generali, through its practices and relationships with its subsidiaries and alternate business names under which it carries out a vast majority of its U.S. business, has consistently shown an existing unity of ownership, of operation, and of use sufficient to definitively establish the unitary nature of Generali's business. Specifically, in addition to the clear unity of ownership as set forth above, Generali's operational unity is evidenced by central advertising, accounting, and management in the United States; further, Generali has demonstrated unity of use in its general system of operation.

### III. JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class is a citizen of a different state than Defendant; there are more than 100 members of the Class; and upon information and belief the aggregate amount in controversy exceeds $5,000,000.00 exclusive of interest and costs.

8. This Court has general personal jurisdiction over Defendants because Generali, by and through its U.S. entities, has purposefully availed itself of the benefits and protections of Colorado by conducting continuous and systematic business operations that are so substantial in this judicial district so as to render it essentially at home in this state. Defendant Generali underwrites insurance

policies to residents of this district.

9. This Court has specific jurisdiction over Defendants because they marketed and sold the insurance policy at issue in this case to the Plaintiff in Colorado; they directed the claim denial to Plaintiff in Colorado; and they collected insurance premiums from Plaintiff in Colorado.

10. Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391 in that all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within that District. Namely, Defendants marketed and sold an insurance policy to Plaintiff in Colorado, and directed the denial letter and claims denials to Plaintiff in Colorado.

### IV. FACTUAL BACKGROUND

11. On February 15, 2019, Plaintiff used the online vacation booking website VRBO.com to book accommodations for his wife's 60th birthday celebration in Maui, Hawaii. He signed a rental agreement for ten guests to stay at a beach house in Maui for six nights, for arrival on June 10, 2020 and check-out on June 16, 2020.

12. Plaintiff paid for the group's oceanfront vacation rental accommodations through VRBO. The total cost was $11,659.50 (including a refundable $1,000 damage deposit), which Plaintiff pre-paid.

13. Upon checkout on VRBO's booking site, Plaintiff elected to pay an optional, additional fee of $479.67 for a travel insurance coverage plan underwritten by Generali.

14. Nearly a year had passed after Plaintiff booked his trip when, on January 21, 2020, the first Covid-19 case the U.S. was confirmed in the state of Washington.

15. On March 4, 2020, Hawaii's governor David Y. Ige issued an emergency Proclamation

declaring a disaster pursuant to Hawaiian statutory law.[2] On March 16, Governor Ige issued a Supplementary Proclamation, authorizing additional statutorily permissible emergency measures.[3]

16.     On March 21, 2020, Governor Ige issued a Second Supplementary Proclamation, supplementing both the initial Proclamation and the Supplementary Proclamation.[4] This Proclamation ordered that all people entering Hawaii, except for certain emergency or critical infrastructure personnel, be subjected to a "mandatory self-quarantine":

> **NOW, THEREFORE**, I, DAVID Y. IGE, Governor of the State of Hawai'i, hereby further supplement the Proclamation of March 4, 2020, and the Supplementary Proclamation of March 16, 2020, both of which shall remain in full force and effect, and authorize and invoke the following:
>
> 1. Pursuant to section 127A-13(a)(1), HRS, all persons entering the State of Hawai'i shall be subject to mandatory self-quarantine, except those persons performing emergency response or critical infrastructure functions who have been exempted by the Director of Emergency Management. The period of self-quarantine shall begin from the time of entry into the State of Hawai'i and shall last 14 days or the duration of the person's presence in the State of Hawai'i, whichever is shorter. This self-quarantine mandate shall take effect on March 26, 2020 at 12:01 am.

Governor Ige's order, as originally entered and as renewed, is referred to hereafter as the "Quarantine Order."

---

[2] *See* https://governor.hawaii.gov/wp-content/uploads/2020/03/2003020-GOV-Emergency-Proclamation_COVID-19.pdf (last accessed January 29, 2021).

[3] *See* https://governor.hawaii.gov/wp-content/uploads/2020/03/2003109-ATG_COVID-19-Supplementary-Proclamation-signed.pdf (last accessed January 29, 2021).

[4] *See* **Exhibit 2**, Second Supplementary Proclamation, *available at* https://governor.hawaii.gov/wp-content/uploads/2020/03/2003152-ATG_Second-Supplementary-Proclamation-for-COVID-19-signed.pdf (last accessed January 29, 2021).

17.     The Quarantine Order further provided that "any person violating the rules relating to quarantine shall be guilty of a misdemeanor, and upon conviction, the person shall be fined not more than $5,000, or imprisoned not more than one year, or both." (*Id.* ¶ 3.) Governor Ige himself characterized his Quarantine Order as "extreme, but necessary" measures "to flatten the curve and lay the groundwork for our recovery."[5]

18.     The Quarantine Order went into effect on March 26, 2020, and Governor Ige renewed it several times over the next several months.

19.     On October 13, 2020, Governor Ige issued a Fourteenth Proclamation that created narrow exceptions to the 14-day quarantine requirement, including one for "persons who, upon entry into the State, provide written confirmation from a State approved COVID-19 testing facility of a negative test result from an observed test administered to the traveler within 72 hours from the final leg of departure."[6] This exception took effect on October 15, 2020.

20.     But despite the evolution of certain exceptions since the initial March 26, 2020 Quarantine Order, the 14-day quarantine remains in effect as of the date of filing of this Complaint.

21.     The mandatory 14-day self-quarantine was in place, and applicable to Plaintiff and all of his family members and guests, during the scheduled June 10-16, 2020 trip to Maui.

22.     Subject to the limited exceptions not applicable to Plaintiff, the Hawaii self-quarantine remains in place to date.

**Plaintiff's Trip Cancellation**

23.     When Plaintiff purchased the Policy at the same time he booked the trip accommodations

---

[5] *See* https://www.cnn.com/travel/article/hawaii-tourist-arrests-quarantine/index.html (last accessed January 29, 2021).

[6] *See* https://governor.hawaii.gov/wp-content/uploads/2020/10/2010095-ATG_Fourteenth-Proclamation-for-COVID-19-distribution-signed.pdf (last accessed January 29, 2021).

through VRBO on or about February 15, 2019, neither he nor any reasonable person in his situation could have foreseen the outbreak of a worldwide viral pandemic that would unfold at a rapid rate nearly a year later.

24. Indeed, Plaintiff booked his trip nearly a year before the first COVID-19 case had even been confirmed in the United States, and more than a year before Hawaii Governor Ige issued the mandatory self-quarantine order for the first time.

25. Plaintiff, who resides in Colorado, was closely following the news coming from Hawaii, as it related to his trip. On March 20, 2020, Plaintiff received an email from the owner of the VRBO rental in Maui that provided a comprehensive update as to the status of travel in Maui. That email noted that state officials were considering a 14-day quarantine for arriving tourists.

26. This email proved prescient, as Governor Ige's 14-day quarantine order came down the very next day, March 21. (*See* Exhibit 2).

27. After careful consideration, Plaintiff reluctantly canceled his long-awaited family trip, notifying CSA of the cancellation on March 23, 2020.

### Plaintiff submits a claim; Defendants deny the claim, twice

28. On June 1, 2020, Plaintiff received a denial letter by email, which stated that the reason for denial was because "the cause of [Plaintiff's] loss is not due to an event that is covered by the plan [he] purchased." *See* **Exhibit 3**, CSA Denial Email (06.01.2020). This was the extent of the explanation, with the rest of the communication containing boilerplate language and an offer to refund Plaintiff's policy premium.

29. That same day, Plaintiff sent an email response that requested an explanation for the denial. Specifically, he asked why the Hawaii mandatory self-quarantine order did not qualify as "being hijacked or quarantined," which is explicitly listed as a covered event under the Policy.

30. On June 5, 2020, CSA responded, this time addressing the quarantine language in the Policy:

> Your policy lists being Quarantine as a Covered Event, however, Quarantine is defined as "The enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."
>
> According to the information provided, you would have been subject to a 14-day Quarantine upon arrival at your destination. However, this event cannot be considered for coverage as you were not actually Quarantined.

(**Exhibit 4,** Second CSA Denial (06.05.2020).)

31. In this communication, Defendants explicitly and openly admit that Hawaii Governor Ige's Quarantine Order was, in fact, a quarantine as defined by the Policy.

32. Defendants appear to contend, however, that because Plaintiff and his wife did not actually get on their scheduled flight from Denver to Maui and subject themselves to Hawaii's mandatory 14-day quarantine – and the potential $5,000 fine or year's imprisonment should they violate it – they were not "being quarantined" under the terms of the Policy.

33. On June 8, 2020, Plaintiff's retained attorney sent a letter to CSA demanding full repayment of Plaintiff's covered losses.

34. On July 13, 2020, CSA responded to Plaintiff's attorney, reiterating its previous claim position and denying the claim, effectively, for a third time. **(Exhibit 5, July 13, 2020 denial)**

## Quarantine Coverage

35. Not only does Defendants' position defy common sense, it evinces an overly restrictive interpretation of how the Policy defines a "quarantine."

36. The Policy defines a "Quarantine" as "the enforced isolation of your or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests." (Policy at 9).

37. The Quarantine Order, as CSA acknowledged, plainly fits within the definition of a "quarantine" under the Policy as it was issued to prevent the spread of "illness" or "disease," – COVID-19.

38. The Policy provides coverage for Trip Cancellation, among other travel plan protections. The Trip Cancellation Benefit provision provides:

> Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, **if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip** to you or your Traveling Companion, while your coverage is in effect under this Policy.

(Policy at 16) (emphasis added).

39. One such "Covered Event" is, of course, "quarantine."

40. It is beyond reasonable dispute that Plaintiff was "prevented from taking [his] Trip" due to the Quarantine Order.

41. Plaintiff was faced with the Hobson's choice of either (1) flying to his destination only to enter a mandatory, 14-day quarantine pursuant to Hawaii law, or else face potential imprisonment; or (2) cancel the trip. Critically, under either circumstance, the Quarantine Order implemented by Governor Ige was what "prevented [Plaintiff] from taking [his] Trip."

42. Plaintiff chose to comply with the Quarantine Order and cancel his trip, believing the insurance coverage he had had the foresight to purchase would provide reimbursement in the face of the disappointment. Unfortunately, his trust in the Defendants proved misplaced, as the Policy he purchased has thus far proved illusory.

43. The unambiguous language of the Policy requires coverage for "Quarantine." Alternatively, should the Court determine there is an ambiguity, it should construe the Policy in favor of Plaintiff (as policyholder) and against Defendants (as drafters of the Policy).

## V. CLASS ALLEGATIONS

44.     Plaintiff brings this action, individually, and on behalf of a nationwide class, pursuant to Federal Rule of Civil Procedure Federal Rules of Civil Procedure 23(a), 23(b)(1), 23(b)(2), 23(b)(3) and/or 23(c)(4), defined as follows :

**Nationwide Class**
All persons located within the United States that purchased travel insurance coverage under the Policy, and were prevented from taking a trip as a result of a covered event during the COVID-19 pandemic, and who have incurred out of pocket Trip Cancellation expenses.

45.     In the alternative to the Nationwide Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following state class only in the event that the Court declines to certify the Nationwide Class above. Specifically, a "Colorado Class" consisting of the following:

**Colorado Class**
All persons located within Colorado that purchased travel insurance coverage under the Policy, and were prevented from taking a trip as a result of a covered event during the COVID-19 pandemic, and who have incurred out of pocket Trip Cancellation expenses.

46.     In the alternative to the Nationwide Class and the Colorado Class, and pursuant to Federal Rule of Civil Procedure, Rule 23(c)(5), Plaintiff seeks to represent the following class only in the event that the Court declines to certify the Nationwide Class above. Specifically, a "Travelers to Hawaii Class" consisting of the following:

**Travelers to Hawaii Class:**

All persons located within the United States
- who purchased travel insurance coverage under the Policy,
- who were prevented from taking a trip to Hawaii from March 26, 2020 to the present, as a result of a covered event during the COVID-19 pandemic, and
- and who have incurred out of pocket Trip Cancellation expenses.

47.     Excluded from the class(es) are Defendants, any entities in which Defendants have a controlling interest, any of the officers, directors, or employees of the Defendants, the legal

representatives, heirs, successors, and assigns of the Defendants, anyone employed with Plaintiff's counsels' firms, any Judge to whom this case is assigned, and his or her immediate family.

48. **Numerosity.** The Class is so numerous that joinder of all members is impracticable. Due to the nature of the insurance involved, the members of the Class are geographically dispersed throughout the United States. While the exact number of Class members is information not readily available at this time, as only Generali possesses the data to determine a numerical figure to indicate the Policies sold throughout the US that have resulted in myriad claims Generali has received from consumers who would qualify as Class Members for purposes of this action, Plaintiff has reasonable belief that there are thousands of potential members in the Class. Generali states on its website that it has a presence in 50 countries in the world and earned a total premium income in excess of €69.7 billion (approximately $80 billion) in 2019, serving 61 million customers worldwide.[7]

49. **Typicality.** Plaintiff's claims are typical of the claims of the other members of the Class he seeks to represent because Plaintiff and all Class members purchased substantively identical coverage from Defendants containing identical language regarding Trip Cancellation and Covered Events, and all Class members have been improperly denied coverage.

50. **Adequacy.** Plaintiff has retained counsel experienced in complex class action and insurance litigation. Plaintiff has no interests which are adverse to or in conflict with other members of the Class. Plaintiff will fully and adequately protect the interests of all members of the Class.

51. **Commonality.** The questions of law and fact common to the members of the Class predominate over any questions that may affect only individual members, namely: whether the events caused by the emergence of the COVID-19 pandemic constitute Covered Events under the Policy, including quarantine orders such as the one that prevented Plaintiff from taking his trip;

---

[7] https://www.generali.com

whether a state or municipality's quarantine order constitutes a "quarantine" pursuant to the Policy; and whether the Policy requires Generali to reimburse Policy holders for expenses incurred as a result of trip cancellation.

52. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all Class members is impracticable. The prosecution of separate actions by individual members of the Class would impose heavy burdens upon the courts and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class. A class action, on the other hand, would achieve substantial economies of time, effort, and expense, and would assure uniformity of decision with respect to persons similarly situated without sacrificing procedural fairness or bringing about other undesirable results.

53. The interest of the members of the Class in individually controlling the prosecution of separate actions is theoretical rather than practical. The Class is cohesive, and prosecution of the action through representatives would be unobjectionable. The damages suffered by the Class are uniform and generally formulaic, and the expense and burden of individual litigation could preclude them form fair redressal of the wrongs done to them. Plaintiff anticipates no difficulty in the management of this action as a class action.

## COUNT I: BREACH OF CONTRACT

**(individually and on behalf of the Nationwide Class or, in the alternative, the Colorado Class or the Travelers to Hawaii Class)**

54. The preceding paragraphs are incorporated by reference as if fully alleged herein.

55. Plaintiff and the class purchased insurance from Defendants and were thereupon issued the Policy.

56. The Policy is a valid and enforceable contract between Generali and all policyholders, including Plaintiff and putative class members.

57. Plaintiff and the class members substantially performed their obligations under the terms of the Policy.

58. Plaintiff and the class members suffered losses from events that should be reimbursed as results of Covered Events under the Policy.

59. Defendants have failed to compensated Plaintiff and class members for their respective losses as required by the Policy.

60. As a direct and proximate result of Defendants' breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial.

## COUNT II: BAD FAITH (individually and on behalf of the Nationwide Class or, in the alternative, the Colorado Class or the Travelers to Hawaii Class)

61. The preceding paragraphs are incorporated by reference as if fully alleged herein.

62. Defendants owed Plaintiff a duty of good faith in all aspects regarding his insurance policy, including to investigate in good faith and provide a reasonable justification for denial.

63. An insurer lacks reasonable justification when it denies the claim in an arbitrary or capricious manner.

64. Defendants' blanket policy for denying all COVID-19 related claims, including those for quarantines, constitutes arbitrary and capricious claims handling and adjusting. Such conduct was uniform as to all class members, and constitutes bad faith.

65. As a direct and proximate result of Defendant's breaches, Plaintiff and the class have sustained damages that are continuing in nature in an amount to be determined at trial, including punitive damages and attorneys' fees.

## COUNT III: DECLARATORY AND INJUNCTIVE RELIEF

**(individually and on behalf of the Nationwide Class or, in the alternative, the Colorado Class or the Travelers to Hawaii Class)**

66.   The preceding paragraphs are incorporated by reference as if fully alleged herein.

67.   An actual controversy has arisen and now exists between Plaintiff and the class, on the one hand, and Defendants, on the other, concerning the respective rights and duties of the parties under the Policy.

68.   Plaintiff contends that Generali has breached the Policy by failing to timely pay Class Members for their respective losses for covered damages.

69.   Plaintiff, therefore, seeks a declaration of the parties' respective rights and duties under the Policy and requests the Court to declare Generali's conduct unlawful and in material breach of the Policy so as to avoid future controversies that would allow for continual injustices such as the one at issue here, where huge insurance companies take advantage of masses of consumers.

70.   Pursuant to a declaration of the parties' respective rights and duties under the Policy and Class Policies, Plaintiff further seeks an injunction enjoining Defendants (1) from continuing to engage in conduct in breach of the Policy; and (2) ordering Defendants to comply with the terms of the Policy, including payment of all amounts due to each respective class member under the stated Policy coverages that were extended to them upon purchase.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, requests relief and judgment against Defendants as follows:

(a)   That the Court enter an order certifying the class, appointing Plaintiff as a representative of the class, appointing Plaintiff's counsel as class counsel, and directing that reasonable

notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the class;

(b) For a judgment against Defendant for the causes of action alleged against it;

(c) For compensatory damages in an amount to be proven at trial;

(d) For a declaration that Defendant's conduct as alleged herein is unlawful and in material breach of the Policy;

(e) For appropriate injunctive relief, enjoining Defendant from continuing to engage in conduct related to the breach of the Policies;

(f) For pre-judgment and post-judgment interest at the maximum rate permitted by law;

(g) For Plaintiff's attorneys' fees;

(h) For Plaintiff's costs incurred; and

(i) For such other relief in law or equity as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all issues so triable.

February 1, 2021

        Respectfully submitted,

        *s/Ben Wickert*
        Ben Wickert, Attorney-in-Charge
        Texas Bar No. 24066290
        Admitted in D. Colorado
        efile@raiznerlaw.com
        **RAIZNER SLANIA LLP**
        2402 Dunlavy Street
        Houston, Texas 77006
        Telephone: (713) 554-9099
        Facsimile: (713) 554-9098

        *Of Counsel*:

        Jeffrey L. Raizner

Texas Bar No. 00784806 (admitted in D. Colorado)
bwickert@raiznerlaw.com
**RAIZNER SLANIA LLP**
2402 Dunlavy Street
Houston, Texas 77006
Telephone: (713) 554-9099
Facsimile: (713) 554-9098

**ATTORNEYS FOR PLAINTIFF**